gavriel: green, beneficiary
℅ 332 NE 24th Avenue
Portland, Oregon near [97232]


## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## MEDFORD DIVISION


| | |
|---|---|
| Gavriel Green | Civil Case No.: 1:24-cv-01873-MC |
| Plaintiff, | |
| v. | |
| City of Talent, DBA Talent Police Dept; | COMPLAINT - AMENDED |
| Star Collision Center, Inc., DBA Star Body Works; | DEMAND FOR JURY TRIAL |
| County of Jackson, AKA Jackson County Justice Court | |
| Defendants. | |

PLAINTIFF gavriel: green, proceeding in propria persona, alleges and states:

## I.    INTRODUCTION

The Plaintiff brings this action before the Honorable Court seeking money damages and

equitable relief against Defendants, *City of Talent*, DBA *Talent Police Dept* ("The Police"), *Star*

*Collision Center, Inc.,* DBA *Star Body Works* ("Star Body"), and *County of Jackson*, AKA

*Jackson County Justice Court* ("The Court"). The Police, Star Body, and The Court hereafter referred to collectively as "Defendants".

## II.    JURISDICTION AND VENUE

This Court has jurisdiction over this action and all counts under Article III, Section 2 of the U.S. Constitution, which is codified in 28 U.S.C. § 1331.

Venue in this district is proper under 28 U.S.C. § 1391(b), as the events giving rise to this claim occurred within this judicial district.

Joinder in this district is proper regarding the three Defendants Under Rule 20(a) of the Federal Rules of Civil Procedure as (1) the claims against the Defendants arise out of the same transaction, occurrence, or series of transactions or occurrences, and (2) there is a question of law or facts common to all Defendants.

Plaintiff, as the beneficiary of the rights protected under the constitution, respectfully commands this Honorable Court, in its capacity as an Article III common law court, to uphold its duty as a public servant to protect Plaintiff's inalienable constitutional rights.

## III.    PARTIES

*Plaintiff*:

Plaintiff was on the landmass of Oregon Republic at all times material to this lawsuit.

*Defendant*:

*City of Talent*, DBA *Talent Police Dept*, is a municipal corporation with its principal place of business located at 604 Talent Ave. #3, Talent, OR 97540.

*Defendant*:

*Star Collision Center, Inc.*, DBA *Star Body Works*, is an Oregon For-Profit Corporation with its principal place of business at 1024 Summit Avenue, Medford, OR 97501. Defendant may be served with process upon its registered agent, Arthur Lamensdorf, at the same address.

*Defendant*:

 *County of Jackson*, AKA *Jackson County Justice Court*, is a municipal corporation with its principal place of business located at 4173 Hamrick Rd., Central Point, OR 97502.

IV.     **GENERAL FACTUAL ALLEGATIONS**

1.  Plaintiff is a conscious, living Being with infinite, natural, unalienable rights, limited only by the necessity to honor the equally infinite rights of others.

2.  Plaintiff is not a Fourteenth Amendment Federal citizen or government employee.

3.  Plaintiff is not a "person" subject to corporate statutes, licensing or privileges.

4.  Plaintiff is not a party to any contract whereby Plaintiff knowingly and willingly waived any of his rights.

5.  Plaintiff is both the source and express purpose of the government's just powers. *Declaration of Independence*, para. 2 (1776).

6.  Plaintiff's automobile was his private property.

7.  Plaintiff holds a valid USDOT number issued by the Federal Motor Carrier Safety Administration (FMCSA) recognizing his automobile as a Private Passenger Motor Carrier (non-commercial only), registered to a trust.

8.  The FMCSA has determined that financial responsibility minimum for Bodily Injury and Property Damage (BI&PD) Liability does not apply to Plaintiff's private motor carrier.

(Exhibit 1)

9.  Plaintiff stored an IRS Form 1099-A, used to discharge debt, in his automobile, valued at four million dollars to cover any possible accident-related liabilities.

10. On March 21, 2024, Plaintiff was traveling in his private conveyance from the landmass commonly known as California to the land of the Republic of Oregon in the capacity of free inhabitant.

11. Plaintiff was utilizing his private conveyance as a temporary dwelling during this transition.

12. Plaintiff's final destination was the city commonly known as Portland, approximately five hours away from where the incident occurred.

13. Plaintiff had the vast majority of his belongings with him, including arms, stored in the trunk.

14. Plaintiff's automobile had no indication of being used for commercial purposes.

15. Plaintiff's automobile prominently displayed its USDOT private motor carrier number.

16. Plaintiff's automobile did not display any indication of having a contract with the Oregon DMV, American Association of Motor Vehicle Administrators (AAMVA), The Police, or The Court.

17. Plaintiff's automobile was in very good condition, with no visible sign of mechanical problems or posing a road hazard.

18. Plaintiff was not maneuvering his automobile in a manner suggesting incompetence or posing an immediate threat to anyone or anything.

19. Officer Michael Sanchez followed behind Plaintiff's automobile in his emergency vehicle, emergency lights flashing.

20. Plaintiff was coerced into stopping.

21. Plaintiff parked in a safe spot on the highway's wide shoulder.

22. Officer Michael Sanchez is a government actor with an oath of office to uphold the U.S. Constitution and a "mission to make citizens feel safe in the City of Talent."

23. Officer Michael Sanchez failed to articulate any constitutional emergency.

24. Officer Michael Sanchez failed to establish jurisdiction over Plaintiff, a foreign national engaged in non-commercial interstate travel, who posed no threat.

25. Officer Michael Sanchez failed to establish jurisdiction over Plaintiff's private conveyance, federally recognized as a private motor carrier.

26. Officer Michael Sanchez disregarded Plaintiff's instruction to run a valid passport card issued by the US Department of State's Bureau of Consular Affairs.

27. Officer Michael Sanchez disregarded Plaintiff's assertion of not being a U.S. citizen.

28. When authorized personnel run a non-citizen national USA passport, it shows a message along the lines of: "Restricted - Do not stop. Do not detain. Do not interrogate - Lifetime Concealed Weapons Permit."

29. Officer Michael Sanchez asserted "Driving is not a right—it's a privilege."

30. The Federal definition of "driver" is commercial in nature.

31. The Federal definition of "traffic" is commercial in nature.

32. The Federal definition of "motor vehicle" is commercial in nature.

33. The Federal definition of "person" is commercial in nature and includes railroads.

34. Upon request for proof of registration, Plaintiff provided Officer Michael Sanchez some USDOT private motor carrier registration paperwork.

35. Upon request for proof of insurance, Plaintiff provided Officer Michael Sanchez his

1099-A, which satisfied the FMCSA's requirements for a private motor carrier.

36. Officer Michael Sanchez openly acknowledged he doesn't know anything about the USDOT, stating that he only knows DMV statutes, and therefore, he's going with those.

37. Plaintiff informed Officer Michael Sanchez that he had not registered his private property with the DMV and had instructed them to destroy the title and remove the VIN from their records, as the automobile would not be used in commerce at all.

38. Officer Michael Sanchez ran the VIN to ensure Plaintiff hadn't stolen his own automobile, even though Plaintiff never reported it stolen.

39. Upon running the VIN, Officer Michael Sanchez discovered that, unbeknownst to Plaintiff, the automobile had been registered to GAVRIEL GREEN™.

40. Officer Michael Sanchez withheld this information from Plaintiff, proceeding as though the automobile were not registered to GAVRIEL GREEN™.

41. Officer Michael Sanchez checked "Driver not Reg. Owner" despite knowing it was already registered to GAVRIEL GREEN™.

42. Officer Michael Sanchez falsely informed Plaintiff that the automobile needed to be registered with the DMV before it could be retrieved from impound.

43. Officer Michael Sanchez cited Plaintiff for not having DMV-recognized auto insurance, despite Plaintiff's private motor carrier not being subject to DMV insurance requirements.

44. The FMCSA does not require private motor carriers to display DMV tags.

45. Officer Michael Sanchez cited Plaintiff for improper display of registration tags (ORS 803.560), even though Plaintiff did not have any tags to display—akin to citing Plaintiff for improper leashing of a non-existent dog.

46. The citation demonstrates that there was no accident, property damage, injury, or endangerment to others.

47. Officer Michael Sanchez verbally admitted there was no victim.

48. Officer Michael Sanchez acts as the government's Executive Branch.

49. Officer Michael Sanchez decided Plaintiff guilty for no insurance, a power delegated to the Judicial Branch under the Constitution.

50. Officer Michael Sanchez's roadside tribunal did not have a jury.

51. Upon determination of Plaintiff's alleged guilt, Officer Michael Sanchez initiated the impoundment of Plaintiff's automobile.

52. Officer Michael Sanchez was fully aware that impounding Plaintiff's automobile would deprive Plaintiff of his shelter and force him to sleep on the street.

53. Officer Michael Sanchez opened Plaintiff's automobile's door without warning and without Plaintiff's consent.

54. Officer Michael Sanchez reached across Plaintiff's body and turned the engine off.

55. Plaintiff believes that Officer Michael Sanchez unbuckled Plaintiff's seatbelt, and video footage would verify this.

56. Officer Michael Sanchez tugged Plaintiff's arm repeatedly.

57. Officer Michael Sanchez's co-officer, who took an oath of office to serve and protect and a mission to make the community feel safe, threatened violence if Plaintiff would not vacate his private property, which he was using as shelter.

58. The Police did not have a warrant justifying the break and enter.

59. The Police did not have a warrant justifying the seizure of private property.

60. The Police did not have a warrant to justify evicting Plaintiff from his shelter.

61. Page 362 of the *Talent Police Department Policy Manual*, section 500.3.1

    ("WARNINGS") states: "Warnings or other non-punitive enforcement actions should be

    considered in each situation and substituted for arrests or citations when circumstances

    warrant, especially in the case of inadvertent violations."

62. The Police asserted Plaintiff may not bear arms without a holster.

63. The Police asserted they must store the suitcase containing Plaintiff's arm until Plaintiff

    retrieves his automobile or obtains a holster.

64. The Police searched the entire suitcase containing Plaintiff's arm.

65. Plaintiff considered leaving his automobile at the impound based on Officer Michael

    Sanchez's incorrect assertion that it had to be registered with the DMV before The Police

    would authorize its release.

66. Therefore, Plaintiff requested The Police store his other belongings along with that

    suitcase to avoid having to retrieve them later from the impound.

67. The Police agreed to store the rest of Plaintiff's belongings on the condition they search

    through each bag to be stored.

68. Plaintiff consented to the search of specific bags for the express purpose of having

    somewhere safe to store those particular bags at no additional cost.

69. Officer Michael Sanchez lifted Plaintiff's automobile's trunk lining without asking

    Plaintiff whether there was anything underneath it he wanted The Police to store.

70. Officer Michael Sanchez did not seek Plaintiff's consent before removing the bag found

    inside the spare tire or before opening and searching any of the boxes within the bag.

71. The officer at the station refused to store Plaintiff's bags, firmly asserting that Plaintiff

    had not consented to a search of his suitcase containing his arm, even though it had

already been searched.

72. The officer at the station commented that he could actually arrest Plaintiff for exercising his constitutionally protected right to keep and bear arms in his suitcase.

73. Plaintiff had to pay for a hotel because he had too many things to safely sleep on the street.

74. Plaintiff informed Officer Michael Sanchez that he held a lien on his automobile and, as the lienholder present at the time of the impound, Star Body was not authorized to take possession of the automobile without his consent.

75. Officer Michael Sanchez asserted that Plaintiff's lienholder status was irrelevant.

76. Page 371 of the *Talent PD Policy Manual* section 510.9 ("RELEASE CRITERIA") subsection (d) states that a security interest holder is not required to show proof of financial responsibility as part of the release criteria.

77. In accordance with the *Talent PD Policy Manual*, Plaintiff's lien exempted him from the requirement to show proof of financial responsibility before releasing the automobile.

78. Officer Michael Sanchez failed to inform Plaintiff that the lienholder could retrieve the automobile without proof of DMV-recognized insurance.

79. Plaintiff was forced to pay a very high insurance premium in order to get the release authorization.

80. Upon providing proof of insurance, Plaintiff was forced to pay The Police $100, cash only, for the release authorization.

81. Plaintiff's copy of the Vehicle Impound Form was mostly blank.

82. Officer Michael Sanchez added significant amounts of information onto the original Vehicle Impound Form afterward.

83. The additional details included, among other things, a date of birth that in no way resembled that shown on GAVRIEL GREEN's ID.

84. Officer Michael Sanchez checked "Hazard" on the impound form.

85. When questioned, Officer Michael Sanchez acknowledged that the alleged "hazard" was a direct result of the stop he had forced Plaintiff to make.

86. Plaintiff held a valid AAA membership and was eligible for towing service at no additional cost.

87. Plaintiff did not request or consent to any of Star Body's towing or storage "services".

88. Deanna at Star Body refused to release Plaintiff's private property, despite Plaintiff showing his perfected UCC-3 lien, claiming that Star Body may auction the automobile regardless of his lien.

89. Deanna asserted that Star Body would charge an additional $280 if Plaintiff left the automobile a second night (beyond the daily storage fee), citing their obligation to mail notice of possession to the lienholder, i.e., Plaintiff.

90. Deanna did not cite any legal authority obligating Star Body to charge Plaintiff $280 for fulfilling its own obligations with STATE OF OREGON.

91. Star Body refused Plaintiff's request to retrieve the rest of his private property from inside his automobile, stating he could only take legal documents.

92. Star Body demanded Plaintiff return his own private property back inside his automobile, including but not limited to his bag filled with legal documents.

93. Plaintiff returned with The Police's release authorization and paid Deanna at Star Body $430 in cash.

94. Deanna accepted the cash but then demanded to see a driver's license before releasing

Plaintiff's property, asserting that she could not accept a valid passport.

95. Page 371 of the *Talent PD Policy Manual* section 510.9 ("RELEASE CRITERIA") subsection (d) states that a security interest holder is not required to show proof of "valid driving privileges" as part of the release criteria.

96. Upon retrieving his automobile from Star Body's lot, Plaintiff noticed the digital clock on the radio was about forty minutes off and the steering was loose, which was not the case when he parked it.

97. Plaintiff exercised his seventy-two hour common law right of rescission to cancel the citation/contract.

98. Plaintiff mailed the original citation to the U.S. Department of the Treasury for subrogation, Registered Mail # RF 668 524 271 US.

99. Plaintiff mailed a copy to The Court with the words "Refused for Cause - No Contract - No Consent", and reserved his rights and identified as the beneficiary, via Registered Mail # RF 668 524 183 US.

100. The Court signed for their parcel on March 27, 2024 at 12:18pm.

101. When Plaintiff called The Court to follow up, the receptionist denied receiving Plaintiff's refusal to contract and stated that the case was still open.

102. Plaintiff informed The Court his NAME is trademarked, explicitly stating that he was providing fair notice that enforcing the fines would constitute trademark infringement.

103. Upon The Court's suggestion, Plaintiff emailed The Court a copy of the refusal to contract, and he used the subject "Rescission of Contract + Trademark Notice."

104. Plaintiff's email stated that his fees for intellectual property infringement far exceed the amount of the fines, and included Plaintiff's *Affidavit of Status / Self-Executing Fee*

Complaint - Amended        11

*Schedule*.

105.    Plaintiff's email also requested The Court's EIN so the IRS can audit them on any

securities made in his name, as well as a copy of the magistrate's oath of office.

106.    The Court replied, in full: "Are you entering a not guilty plea?"

107.    Plaintiff mailed The Court a *Conditional Acceptance* via Priority Mail # EI 318 403

153 US, which they received on April 30, 2024 at 1:53 p.m.

108.    The *Conditional Acceptance* contained an affidavit and Plaintiff's conditions for

accepting the invitation to their business meeting scheduled for May 9, 2024, and stated,

"However, if You **Neither** Cancel the Meeting **Nor** Respond to Points 2-17, Then by

Your Dishonor, You Contractually Grant Me (the Beneficiary) Power of

Attorney/Authority to Lien You (the Trustees) for Any Distress You Have Caused or May

Cause Me Regarding GAVRIEL GREEN Trust Matters."

109.    The Court did not respond.

110.    The Court has contractually agreed to compensating Plaintiff for any distress they

caused or may cause.

111.    On or about May 20, 2024, Plaintiff received a "TRIAL NOTICE" addressed to

"GREEN,GAVRIEL" "DEFENDANT" dated May 16, 2024—one week after the court

date listed on the citation—in which The Court offered to re-contract with Plaintiff,

setting a *new* court date for July 11, 2024.

112.    The Trial Notice listed "STATE OF OREGON" "COUNTY OF JACKSON" as

plaintiff in the trial.

113.    The Court was both the victim and arbiter.

114.    The following day, Plaintiff emailed The Court a copy of their trial notice with his

inscription "NO CONTRACT - DO NOT CONSENT", reservation of rights, and identifying as the beneficiary.

115.    Plaintiff's email also included a *Notice of Default* regarding his *Conditional Acceptance*, a copy of the *Conditional Acceptance*, a second copy of his *Affidavit of Status* /self-executing *Fee Schedule*, and an invoice based on that Fee Schedule.

116.    On or about June 10, 2024, Plaintiff mailed The Court a printout of the email, along with the original Trial Notice with his refusal to recontract and physical copies of all documents sent in that email, which The Court received on June 12, at 11:57 a.m., via Priority Mail EI 318 403 017 US.

117.    The Court has not acknowledged Plaintiff's communications.

118.    Despite Plaintiff's repeated challenges to jurisdiction throughout his written correspondences, along with challenges regarding procedural violations, The Court has neither established its jurisdiction nor addressed Plaintiff's challenges.

119.    On or about July 21, 2024, Plaintiff received an envelope from The Court addressed to "GREEN,GAVRIEL" "DEFENDANT".

120.    Plaintiff presumed this to be another instance of mail fraud and harassment.

121.    Plaintiff did not open the envelope, marked it "Undeliverable", and advised the postal clerk to return it to sender.

122.    Plaintiff subsequently received a letter from the Oregon DMV dated August 29, 2024, addressed to GAVRIEL GREEN, threatening to suspend GAVRIEL GREEN's "driving privileges", "because Jackson County Justice Court convicted you of driving uninsured in violation of ORS 806.010 on July 11, 2024…"

123.    About five months later, on or about January 6, 2025, Plaintiff received three letters

addressed to GREEN GAVRIEL from an undisclosed sender in California, alleging that

GREEN GAVRIEL owes Jackson County Justice Court $115, $115, and $265, and stating

that if the alleged amounts are not paid to Jackson County Justice Court within 14 days,

Collect Northwest will collect and charge a 25% fee.

124.    The Court is actively seeking financial benefit from its own judicial decision.

125.    The Court is actively seeking financial benefit from the mark GAVRIEL GREEN™.

126.    On or about April 22, 2024, Plaintiff drafted an affidavit for The Police titled

*Affidavit of Treason & Deprivation of Rights Under Color of Law*, mailed by the notary

herself, with instructions for The Police to respond to the notary.

127.    The notary enclosed a copy of Plaintiff's previously notarized *Affidavit of Status / Fee

Schedule* as well.

128.    The Police signed for Plaintiff's first parcel Certified Mail # 7022 2410 0003 0972

7026 on April 29, 2024 at 1:22 pm.

129.    The Police did not respond.

130.    Plaintiff repeated this process with the notary.

131.    The Police picked up Plaintiff's second parcel at the post office Certified Mail # 7022

2410 0003 0972 5916 on May 28, 2024 at 1:29 pm.

132.    The Police did not respond.

133.    Plaintiff repeated this process with the notary a third time, along with a notarized

*Notice of Default* and a notarized *True Bill*.

134.    Plaintiff's notarized *Notice of Default* to The Police stated,

"If You **Neither** Respond **Nor** Pay the True Bill, Then by Your Acquiescence, You

Contractually Grant Me Power of Attorney/Authority to Lien You and/or Petition for

Summary Judgment and/or Employ a Collector."

135.    The Police signed for Plaintiff's third and final parcel Certified Mail # 7022 2410 0003 0972 6968 on July 16, 2024 at 11:34 am.

136.    Neither the notary nor Plaintiff received any response whatsoever.

137.    On or about May 14, 2024, Plaintiff sent Star Body an affidavit along with his *Affidavit of Status / Fee Schedule*, a copy of the Vehicle Impound Form, and a copy of the affidavit Plaintiff created for The Police.

138.    In a letter dated May 21, 2024, Star Body responded to Plaintiff's affidavit, simply directing him to the Oregon DOJ in regards to The Police and to Oregon State Board of Towing regarding all tow complaints.

139.    On or about May 25th, Plaintiff sent the affidavit to Star Body a second time, along with a letter acknowledging Star Body's prerogative to delegate their response to any entity Star Body deems responsible, provided that someone signs under penalty of perjury and is willing to appear in court on Star Body's behalf.

140.    Plaintiff's second letter reiterated that failure to respond to each point under penalty of perjury is acquiescence to Plaintiff's allegations.

141.    Star Body signed for Plaintiff's second affidavit on May 28, 2024 at 9:24 am Certified Mail # 9589 0710 5270 0650 6936 42.

142.    Star Body did not respond.

143.    On or about July 22nd, Plaintiff sent Star Body a third copy of his affidavit, along with a *True Bill* and a *Notice of Default* which stated *"If You **Neither** Respond **Nor** Pay the True Bill, Then You Contractually Grant Me Power of Attorney / Authority to <u>Lien</u> Your Company and/or Employ a Debt <u>Collector</u> and/or <u>Petition for Summary Judgment</u>."*

144.    Star Body signed for Plaintiff's third and final parcel on July 26, 2024 at 10 am
Certified Mail # 9589 0710 5270 0650 6936 59.

145.    Star Body did not respond.

146.    The Court knowingly and willfully engaged in actions explicitly outlined on
Plaintiff's Fee Schedule, contractually agreeing to pay Plaintiff's fees.

147.    The Police agreed to Summary Judgment in Plaintiff's favor.

148.    Star Body agreed to Summary Judgment in Plaintiff's favor.

149.    Defendants routinely collaborate in similar ventures.

## V.    COUNT ONE - INFRINGEMENT OF RIGHT TO TRAVEL

150.    Plaintiff realleges and restates the foregoing jurisdictional allegations and general
factual allegations.

151.    Officer Michael Sanchez took an oath of office to uphold Plaintiff's constitutionally
protected Right to Travel freely on public roadways in the lawful pursuit of life, liberty,
and happiness.

152.    Officer Michael Sanchez, agent of the State, had a duty to know that STATE OF
OREGON did not have the power to convert Plaintiff's right into a privilege, license it
and attach a fee to it. *Murdock v. Pennsylvania*, 319 U.S. 105 (1943).

153.    Officer Michael Sanchez had a duty to know that any "law" that conflicts with the
supreme law of the land is null and void. *Marbury v. Madison*, 5 US 137 (1803).

154.    Officer Michael Sanchez had a duty to know that Plaintiff retained the right to
exercise his freedom with immunity, regardless of STATE OF OREGON's conversion of
that right into a privilege. *Shuttlesworth v. Birmingham,* 373 U.S. 262 (1963).

155.    The Court had a duty to interpret constitutional protections broadly in Plaintiff's favor

and to guard against any subtle or underhanded infringements of Plaintiff's rights. *Boyd v. United States*, 116 U.S. 616 (1886).

156.    The Police and The Court had a duty to understand the definitions of the statutes they enforce and to apply them appropriately.

157.    Officer Michael Sanchez asserted twice that "driving" is not a right but a privilege, even though there was no evidence that Plaintiff was driving in commerce.

158.    Officer Michael Sanchez blatantly violated his duty to safeguard one of Plaintiff's most fundamental and self-evident rights.

159.    Officer Michael Sanchez disregarded GAVRIEL GREEN's government-issued private travel documents, including its USA passport card and USDOT registration paperwork.

160.    Officer Michael Sanchez asked Plaintiff for a driver's license and, without being asked or directed, searched his database for GAVRIEL GREEN's driver's license.

161.    To "license" means to confer a right or power which does not exist without it. *Black's Law*, 4th ed. page 1067.

162.    The Court breached its duty to protect Plaintiff's unalienable right to travel freely and unencumbered by endorsing The Police's erroneous fines, imposing cost prohibitive requirements, and ordering the DMV to suspend GAVRIEL GREEN's driver's license in a blatant effort to further restrict Plaintiff's freedom of movement.

163.    Star Body, a for-profit corporation, demanded Plaintiff produce a driver's license.

164.    Defendants compelled Plaintiff to comply with "traffic" regulations intended for "persons" "driving" a "motor vehicle" in "STATE OF OREGON".

165.    This forced compliance deprived Plaintiff of his free will to choose between *traveling*

and *driving*, undermining his very autonomy.

166.    This forced compliance resulted in an unlawful stop, improper citations, threat of

violence, unlawful impoundment, excessive and inappropriate fees, and The "traffic"

Court's unjust persistence.

167.    Star Body's demand for compliance further delayed Plaintiff and caused him

additional stress, as he had no idea where GAVRIEL GREEN's driver's license was and

faced the imminent risk of losing his automobile and the property inside despite having

already complied with all of The Police and Star Body's other requirements.

168.    Defendants' actions threatened Plaintiff's fundamental right to liberty and pursuit of

happiness, leaving a deep psycho-spiritual scar that continues to impact his quality of life.

## VI. COUNT TWO - INFRINGEMENT OF FOURTH AMENDMENT

169.    Plaintiff realleges and restates the foregoing jurisdictional allegations and general

factual allegations.

170.    Officer Michael Sanchez took an oath to uphold Plaintiff's right to be secure in his

persons, houses, papers, and effects, against unreasonable searches and seizures.

171.    Officer Michael Sanchez seized Plaintiff's automobile when he flashed his emergency

lights.

172.    Officer Michael Sanchez searched Plaintiff's papers and effects.

173.    Officer Michael Sanchez admitted to lack of jurisdiction when he admitted he doesn't

know anything about the USDOT; yet he continued the search and seizure anyway.

174.    The search was not relevant to the alleged cause for the initial stop.

175.    Officer Michael Sanchez used the information printed on the passport card to search

DMV records, contrary to Plaintiff's clearly providing it for the sole purpose of

verification with the U.S. Department of State.

176.    Officer Michael Sanchez infringed on Plaintiff's right to privacy.

177.    Officer Michael Sanchez evicted Plaintiff from his private property used as a
temporary dwelling.

178.    The Police seized Plaintiff's lawful arm.

179.    The Police seized the entire suitcase containing Plaintiff's arm.

180.    The Police and Star Body seized Plaintiff's automobile.

181.    Star Body seized Plaintiff's private property inside Plaintiff's automobile.

182.    Star Body seized Plaintiff's legal documents.

183.    As a result, Plaintiff suffered damages as detailed throughout this Complaint.

## VII. COUNT THREE - INFRINGEMENT OF FIFTH AMENDMENT

184.    Plaintiff realleges and restates the foregoing jurisdictional allegations and general
factual allegations.

185.    The officers at Talent Police Department took an oath to uphold Plaintiff's right to be
presumed innocent until proven guilty.

186.    Officer Michael Sanchez had a duty to presume that, if Plaintiff were lawfully
required to carry insurance, Plaintiff was in compliance.

187.    Officer Michael Sanchez had a duty to presume that Plaintiff lawfully possessed the
automobile in question.

188.    The Police had a duty to presume that if Plaintiff were lawfully required to obtain
permission to exercise his right to bear arms—whether with or without a
holster—Plaintiff would have obtained such permission.

189.    The Police had a duty to know they could disregard any unconstitutional "law" or

training that required them to infringe upon the presumption of innocence.

190.    The Police had a duty to inform Plaintiff that any statements he made, documents he

provided, or information obtained could be used against him.

191.    The Police had a duty to inform Plaintiff of his right not to produce any requested

documentation or answer any questions, and that exercising this right would not be

considered admission of guilt.

192.    Plaintiff was compelled to answer questions, allow Officer Michael Sanchez to run

the automobile's VIN, and show other documentation which could incriminate himself.

193.    All evidence obtained as a result of The Police's presumption of Plaintiff's guilt and

their failure to inform him of his right to remain silent is inadmissible.

194.    All actions taken by Defendants based on inadmissible evidence were unlawful and

without legal basis.

195.    Officer Michael Sanchez took an oath to uphold Plaintiff's right against being tried or

punished twice for the same crime.

196.    By citing Plaintiff for no insurance *and* impounding Plaintiff's automobile for the

same reason, Officer Michael Sanchez effectively punished Plaintiff twice for the same

thing.

197.    The duplicate punishments caused The Court and the DMV to demand proof of

insurance, despite the fact that Plaintiff could not have reclaimed his automobile without

already providing such proof to The Police.

198.    By separating the citation trial from the optional impound fee contest, The Police

effectively created two proceedings stemming from the same alleged cause.

199.    The officers at Talent Police Department took an oath of office to uphold Plaintiff's

right to due process *before* depriving him of his property.

200.   The Police, as an actor of the Executive Branch, improperly assumed Judicial Powers when Officer Michael Sanchez unilaterally determined Plaintiff to be guilty of violating a DMV regulation.

201.   The citations lacked due process because The Court was a party to the action.

202.   The citations lacked due process because the magistrate receives commissions on all fines enforced, categorically disqualifying him from acting as an impartial judicial officer. *Tumey v. Ohio*, 273 U.S. 510 (1927).

203.   The two police officers conspired to infringe upon Plaintiff's rights protected under the Fifth Amendment.

204.   Star Body colluded with The Police to infringe upon Plaintiff's rights as protected under the Fifth Amendment.

205.   The Police and The Court conspired to infringe upon Plaintiff's rights protected under the Fifth Amendment.

206.   Plaintiff experienced The Police's presumption of guilt, placing Plaintiff on the defensive and pressure to incriminate himself—as though he were required to justify his very autonomy—as a psycho-spiritual attack.

207.   The Police's clear and consistent pattern of infringing upon Plaintiff's Fifth Amendment rights, along with Star Body's collusion, caused Plaintiff significant harm, as detailed throughout this Complaint.

208.   The Court's infringement upon Plaintiff's Fifth Amendment rights, instigated by The Police, caused significant distress, draining Plaintiff's time and energy in responding.

## VIII. COUNT FOUR - INFRINGEMENT OF SECOND AMENDMENT

209.    Plaintiff realleges and restates the foregoing jurisdictional allegations and general

factual allegations.

210.    The officers of The Police took an oath of office to support Plaintiff's right to keep

and bear arms.

211.    The Police asked Plaintiff whether he had a concealed carry permit, indicating they

did not recognize his inherent right to keep and bear arms.

212.    Had Officer Michael Sanchez run Plaintiff's passport card, The Police would have

been aware of Plaintiff's "lifetime concealed weapons permit".

213.    The Police seized and searched the entire suitcase containing Plaintiff's arm because

Plaintiff had not paid a fee to obtain a license to exercise a right which he already had.

214.    The two officers conspired to infringe Plaintiff's right to bear arms.

215.    This infringement created the "necessity" to infringe on Plaintiff's Fourth

Amendment right, i.e., seizing and searching his suitcase.

216.    The officer at the station clearly and unambiguously implied he had the authority to

arrest Plaintiff for exercising his Constitutionally protected right to bear arms.

217.    The Police are prohibited from criminalizing Plaintiff's exercise of his rights. *Miller

v. United States*, 230 F.2d 486, 490 (5th Cir. 1956).

218.    Plaintiff suffered emotional distress upon realizing that his rights were subject to the

whims of those sworn to uphold those very rights and liberties.

219.    This realization significantly contributed to Plaintiff's overall traumatic experience,

with effects that persist to this day.

## IX. COUNT FIVE - INFRINGEMENT OF EIGHTH AMENDMENT

220.    Plaintiff realleges and restates the foregoing jurisdictional allegations and general

factual allegations.

221.    The Police and The Court took an oath of office to support Plaintiff's right against excessive fines and cruel and unusual punishment.

222.    The fines were excessive in relation to the "crimes" allegedly committed.

223.    The fines were excessive in relation to Plaintiff's zero income.

224.    Evicting Plaintiff from his temporary dwelling was grossly disproportionate to the alleged offense of no DMV-recognized insurance.

225.    Impounding Plaintiff's automobile created a situation that was easily foreseeable to result in excessive fees, and potentially, the cruel and disproportionate punishment of Plaintiff's property being auctioned off with Plaintiff receiving no compensation.

226.    Suspending GAVRIEL GREEN™'s driving privileges is grossly disproportionate to the alleged offense because GAVRIEL GREEN™ only requires a license for commercial driving, which Plaintiff typically does using employer-provided vehicles covered by insurance, or for renting vehicles that either include insurance or do not require it.

## X. COUNT SIX - FAILURE TO PAY RENTAL FEES DUE

227.    Plaintiff realleges and restates the foregoing jurisdictional allegations and general factual allegations.

228.    Star Body took possession of Plaintiff's automobile.

229.    Star Body did not hold title to Plaintiff's automobile.

230.    Star Body effectively rented Plaintiff's automobile for two calendar days.

231.    Star Body had a duty to pay Plaintiff for renting his automobile.

232.    Plaintiff was unable to enjoy his automobile while in Star Body's possession.

233.    Plaintiff was unable to rent his automobile out while in Star Body's possession.

234.   Plaintiff sent Star Body a True Bill for the rental fees owed.

235.   Star Body neither contested nor paid Plaintiff rental fees owed.

236.   Star Body acquiesced to owing Plaintiff two troy ounces of gold—approximately

$5,449.591.

237.   Plaintiff suffered damages because he did not have access to his automobile, which

interrupted his travels and left him without shelter, causing Plaintiff to pay for a motel,

while Star Body effectively rented Plaintiff's automobile.

## XI. COUNT SEVEN - TRADEMARK INFRINGEMENT

238.   Plaintiff realleges and restates the foregoing jurisdictional allegations and general

factual allegations.

239.   Plaintiff is the owner of registered trademark pending "GAVRIEL GREEN", USPTO

serial # 98069646.

240.   The Court is using the mark "GAVRIEL GREEN", and/or "GREEN,GAVRIEL"

and/or "GREEN GAVRIEL"—which are deceptively similar—for its own commercial

interest without Plaintiff's authorization.

241.   Plaintiff has warned The Court about his trademark ad nauseam, including numerous

copies of his Fee Schedule.

242.   The Court has knowingly and willfully employed a debt collector to monetize the

mark "GAVRIEL GREEN" or its deceptively similar variations.

243.   Plaintiff notified the debt collector of his mark; any further unauthorized attempts to

use "GAVRIEL GREEN" for financial gain constitute conspiracy.

244.   Discovery will reveal any other securities bearing the mark "GAVRIEL GREEN".

## XII. COUNT EIGHT - INFLICTION OF EMOTIONAL DISTRESS

245.    Plaintiff realleges and restates the foregoing jurisdictional allegations and general factual allegations.

246.    The *Talent PD Policy Manual* encourages The Police to consider warnings or other non-punitive enforcement rather than arrests or citations "especially in the case of inadvertent violations."

247.    Regardless of Officer Michael Sanchez's interpretation of Plaintiff's USDOT private motor carrier registration, 1099-A, or Plaintiff's instruction to run his passport before proceeding, it remains clear that Plaintiff acted in good faith, even if Officer Michael Sanchez believed him to be mistaken.

248.    Officer Michael Sanchez could have considered that Plaintiff was in the midst of an interstate move with nearly all his belongings and would be stranded five hours from his final destination, without shelter, if his automobile were impounded.

249.    Officer Michael Sanchez knew, or should have known, that causing Plaintiff to sleep on the street—especially in an unfamiliar city—would likely inflict emotional distress.

250.    Officer Michael Sanchez knew or should have known that misleading Plaintiff into believing he needed to resolve unnecessary registration and its associated fees—while stranded in a strange city with all his belongings, without a vehicle or social support—would cause significant emotional distress.

251.    Officer Michael Sanchez's co-officer knew or should have known that threatening violence over a harmless, minor alleged infraction was likely to cause emotional distress.

252.    The officer at the station knew or should have known that asserting false authority to arrest Plaintiff for exercising his constitutionally protected right was likely to cause

emotional distress.

253.    The officer at the station knew, or should have known, that refusing to store Plaintiff's luggage—after it had already been searched—and causing Plaintiff to carry all his belongings while seeking safe shelter would reasonably exacerbate the emotional distress already inflicted.

254.    The Police knew or should have known that forcing Plaintiff to defend himself against the very individuals sworn to protect his natural, unalienable rights was an egregious abuse likely to cause significant emotional distress.

255.    The Court knew or should have known that repeatedly compelling Plaintiff to reenter contracts he had already refused, and enlisting third parties to hold him accountable despite The Court's default on Plaintiff's *Conditional Acceptance* and challenges to jurisdiction, was appalling behavior likely to cause significant emotional distress.

256.    Star Body knew, or should have known, that holding Plaintiff's lawful private property hostage within his automobile would likely cause emotional distress.

257.    Star Body knew, or should have known, that illegally demanding Plaintiff return his legal documents into his hostage-held automobile would likely cause emotional distress.

258.    Star Body knew, or should have known, that charging outrageous, cash-only fees for non-consensual and unnecessary "services"—while threatening to impose even more fees—would likely cause Plaintiff significant emotional distress by inducing financial strain and a sense of helplessness and exploitation.

259.    Star Body knew, or should have known, that mishandling Plaintiff's automobile—and refusing to take responsibility when Plaintiff informed them of signs suggesting they had dropped his automobile—would only intensify the emotional distress already inflicted by

Defendants' previous actions.

260.     Star Body knew or should have known that demanding Plaintiff produce a driver's

license, despite being the lienholder and The Police having already issued the release

form, was unnecessary and would cause undue stress by arbitrarily exerting control over

him, especially given the hardships Plaintiff had already endured.

261.     Upon getting into his motel bed March 21, 2024, Plaintiff experienced the most

intense heart palpitations, tight chest, and painfully tense neck and shoulders he'd ever

experienced in his life. The pain, intensity and racing heart lasted all night long, relieved

only after very long walks throughout the night.

262.     Plaintiff received a therapy session on his way up to Portland, and a few more

sessions in Portland.

263.     Plaintiff lost the joy of road trips and, especially, his beloved joy of motorcycle

riding, fearing that any stop could escalate into tasing, physical harm, arrest, and/or

losing his automobile, as all too often occurs in routine "traffic" stops.

264.     This fear, manifesting as anxiety before traveling and heightened paranoia on the

road, has permanently tarnished an activity that once brought Plaintiff great joy, freedom,

and independence. As a result, Plaintiff rarely goes out, significantly diminishing his

quality of life.

## XIII. COUNT NINE -  BREACH OF CONTRACT

265.     Plaintiff realleges and restates the foregoing jurisdictional allegations and general

factual allegations.

266.     The Police agreed to store Plaintiff's bags on the condition they may search and take

inventory of all bags to be stored.

267.    Plaintiff relied on this promise and asked Officer Michael Sanchez to remove additional bags from his automobile, beyond what Plaintiff could comfortably carry or safely sleep with on the street.

268.    Plaintiff performed his obligation under the agreement by allowing Officer Michael Sanchez to search all of his bags to be stored.

269.    The Police failed to fulfill their obligation under the agreement by refusing to store Plaintiff's bags, despite having already searched them.

270.    Plaintiff suffered because his privacy was violated and he received no benefit in return.

271.    Plaintiff suffered because The Police broke his trust.

272.    Plaintiff had to carry all of his things to the bus stop and search for a motel in an unfamiliar area after dark, which was very stressful.

273.    Plaintiff had to pay the motel as a result of The Police breaking their promise to store Plaintiff's belongings.

## XIV. COUNT TEN - FALSE AND MISLEADING INFORMATION, BAD FAITH

274.    Plaintiff realleges and restates the foregoing jurisdictional allegations and general factual allegations.

275.    Officer Michael Sanchez swore to faithfully and honestly discharge his duties.

276.    Officer Michael Sanchez cited Plaintiff for failure to obey a traffic signal but, when asked, Officer Michael Sanchez was evasive regarding the details.

277.    Officer Michael Sanchez knowingly misled Plaintiff into believing he must register his automobile with STATE OF OREGON in order to receive the impound release form.

278.    If Officer Michael Sanchez had been transparent about only needing to provide proof

of State-approved insurance, Plaintiff would have offered to purchase State-approved

insurance on the spot and avoid the impound altogether.

279.    Officer Michael Sanchez intended for Plaintiff to manage unnecessary vehicle

registration in an unfamiliar city while carrying all his belongings, without social support

or access to his automobile, and under the looming pressure of accumulating impound

fees—exploiting Plaintiff's unawareness that the automobile had already been registered.

280.    When asked what Plaintiff's passport records show, Officer Michael Sanchez replied,

"It shows that you have an Oregon driver's license."

281.    Plaintiff did not submit an Oregon driver's license when applying for the passport.

282.    Officer Michael Sanchez frivolously cited Plaintiff for "improper display",

scapegoated Plaintiff for the alleged hazard he himself orchestrated, withheld information

regarding the alleged red light, altered the impound form after providing Plaintiff with his

copy, fabricated Plaintiff's date of birth, feigned an urgency for Plaintiff to register his

automobile with the Oregon DMV, and erroneously implied Plaintiff's passport records

showed an Oregon driver license.

283.    Officer Michael Sanchez demonstrated a clear pattern of misconduct that is

unacceptable from those sworn to serve and protect and to fulfil their duties in honesty.

284.    Officer Michael Sanchez's pattern of bad faith undermines any potential defenses The

Police may raise.

285.    As a result of Officer Michael Sanchez's false and misleading information, Plaintiff

had to pay avoidable impound fees, suffered significant disruption to his travels, and

experienced unnecessary stress regarding registration.

286.    Star Body benefitted from Officer Michael Sanchez's false and misleading

information, causing Plaintiff harm as detailed throughout this Complaint.

## XV. COUNT ELEVEN - LACK OF FULL DISCLOSURE, PREDATORY PRICING and EXTORTION

287.  Plaintiff realleges and restates the foregoing jurisdictional allegations and general factual allegations.

288.  Defendants had a duty to be transparent about their fees, ensure those fees were reasonable for the services rendered, and to honor the price they signed off on.

289.  Star Body's tow driver, Brandon Neilson, signed the Vehicle Impound Form next to the box indicating the tow charge of $240 (plus $40 per day of storage).

290.  The following day, March 22, 2024, Deanna at Star Body charged Plaintiff $300 for the tow plus a $50 dispatch charge (plus storage); a $110 discrepancy.

291.  The Vehicle Impound Form did not clarify that the daily storage fee goes by the calendar day and that Plaintiff would be charged $80 for the one night.

292.  Deanna asserted Star Body would charge Plaintiff an additional $125 weekend gate fee (on top of the $300 tow fee, $50 dispatch fee, $280 notice to lienholder fee, and the daily storage fee) if he were to leave his automobile that second night.

293.  These fees were not disclosed on the Vehicle Impound Form.

294.  Star Body accepts cash only.

295.  The Police charged Plaintiff $100 for the impound release authorization.

296.  The release authorization process took approximately five minutes, effectively equating to The Police charging $1,200 per hour for their services.

297.  The Police accepted cash only.

298.  The Court seeks $495 from Plaintiff despite never providing any product, service,

benefit, or consideration of equivalent value.

299.    Defendants charged unconscionable fees, preying on Plaintiff's situation.

300.    Star Body and The Police extorted Plaintiff for cash, leaving him acutely aware of being exploited and feeling as though he were merely an ATM for Defendants.

301.    After being coerced into paying over $200 for one month of insurance and incurring approximately $84 in unanticipated motel expenses, The Police's $100 fee and Star Body's $430 ransom left Plaintiff with barely enough funds for gas to complete his move.

## XVI. COUNT TWELVE - BATTERY AND ASSAULT

302.    Plaintiff realleges and restates the foregoing jurisdictional allegations and general factual allegations.

303.    Officer Michael Sanchez grabbed Plaintiff's wrist and tugged several times.

304.    Officer Michael Sanchez did not have any lawful authority to touch Plaintiff.

305.    Plaintiff calmly asked Officer Michael Sanchez to let go of his wrist.

306.    Officer Michael Sanchez's co-officer threatened violence if Plaintiff would not exit his private property.

307.    Punitive enforcement was not warranted or encouraged under the circumstances.

308.    The Police did not have any lawful authority to endanger Plaintiff.

309.    Plaintiff experienced significant trauma and a profound sense of betrayal because he was forced to protect himself from the very officers sworn to serve and protect him.

310.    Officer Michael Sanchez asserted that despite he and his co-officer carrying guns, torture devices and handcuffs, Plaintiff could not hold his thirty-two ounce plastic water bottle due to 'officer safety.'

311.    This terrifying power dynamic contributed to Plaintiff's already vulnerable position

and sense of helplessness, and intensified the traumatic experience.

312.    As a result of The Police's infliction of battery and assault, Plaintiff lost his shelter

and incurred exorbitant impound fees and a release form fee.

313.    Star Body profited from the fruits of The Police's battery and assault.

## XVII. COUNT THIRTEEN - RACKETEERING (18 U.S. Code § 1964 - Civil remedies)

314.    Plaintiff realleges and restates the foregoing jurisdictional allegations and general

factual allegations.

315.    Defendants leveraged multiple elements of interstate commerce, including Federal

Reserve notes, the USPS system, email, online banking platforms, and interstate debt

collection practices involving coordination between collectors in California and Oregon.

316.    The Police have repeatedly acquiesced to Plaintiff's *Affidavit of Treason &*

*Deprivation of Rights Under Color of Law* (18 USC § 2381, 18 USC § 241, 18 USC §

242), and Star Body has similarly acquiesced to Plaintiff's allegations of conspiring with

The Police, offering no remorse or intent to cease their actions.

317.    The Police and Star Body violated Plaintiff's safe conduct and passport as part of

their corporate policies. 18 USC §1545.

318.    The Court has failed to establish jurisdiction while continuing to pursue the alleged

case, thereby engaging in acts of treason. *Cohens v. Virginia*, 19 US (6 Wheat) 264, 404,

5 L.Ed 257 (1821).

319.    Defendants enforce commercial statutes against private travelers, systematically

penalizing and extorting them for unjust fees, fines, and property through threats of

violence, property forfeiture, and the use of debt collectors. 18 USC §1951.

320.    The Court and its magistrates profit from guilty verdicts, a bias that denies

Defendants' victims due process.

321.    The Police extort their victims for $100 for the impound release form, and Discovery will reveal any other financial incentives The Police may have for seizing vehicles.

322.    Star Body extorts their victims with exorbitant ransom fees, and Discovery will uncover any financial motives Star Body may have for auctioning the vehicles.

323.    Discovery will uncover any financial motives The Court may have for denying Defendants' victims the impound fee contest and/or for auctioning vehicles.

324.    The Police and The Court conspired to defraud Plaintiff, making false claims, misrepresenting their authority, and using the US Postal Service to threaten, harass, and demand unlawful payments while offering no value in return. *Frauds and swindles*, 18 USC § 1341.

325.    Defendants' racketeering activities are part of their ongoing enterprise.

326.    Plaintiff suffered $530 in actual damages plus hotel fees due to the unlawful seizure of his temporary dwelling, and faces threats of an additional $618.75 due to the ongoing "debt" collection activities.

327.    Plaintiff is entitled to triple damages, and seeks to include the hotel and debt threats.

## XVI.   DEMANDS FOR RELIEF

328.    The Police agreed to Summary Judgment in the amount of 6,414 troy ounces of gold, or the equivalent in USD—approximately $17,040,934.91 (Seventeen Million Forty Thousand Nine Hundred Thirty-Four Dollars and Ninety-One Cents).

329.    Star Body agreed to Summary Judgment in the amount of 1,169.04 troy ounces of gold, or the equivalent in USD—approximately $3,105,945.52 (Three Million One Hundred Five Thousand Nine Hundred Forty-Five Dollars and Fifty-Two Cents).

330. The Court agreed to pay Plaintiff's invoice of 4,989.5 troy ounces of gold, or the equivalent in USD—approximately $13,422,640.50 (Thirteen Million Four Hundred Twenty-Two Thousand Six Hundred Forty Dollars and Fifty Cents).

331. Plaintiff is entitled to treble damages for fees incurred as a result of Defendants' racketeering: The Police charged Plaintiff $100; Star Body charged Plaintiff $430; Plaintiff incurred an $84 hotel fee; The Court is threatening $618.75.

332. The Police and The Court will study the Constitution they swear to uphold, interpreting it in favor of the beneficiaries. The guiding principle will be, "If the framers of the Constitution were watching my body cam right now, what would I choose?"

333. The Police and The Court will study the definitions of the statutes they enforce.

334. The Court will stop incentivizing magistrates to issue guilty verdicts and will cease collecting on its own decisions.

335. The Police will issue a nationally recognized ID that clearly communicates Plaintiff's inherent rights, as an alternative to Plaintiff's passport, which requires additional verification steps.

336. Defendants will cease towing people's property without due process. Exceptions may be made only when the owner cannot be reached, and the tow serves a genuine need to relocate the vehicle to a safe location with free or reasonably priced parking.

337. Any other relief this Honorable Court deems just and proper under the circumstances.

Dated January 16, 2025                          RESPECTFULLY SUBMITTED,

                                                without prejudice,

                                                _gavriel_____
                                                gavriel: green, beneficiary